IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION



MICHAEL A. WATT,

    Plaintiff,

v.   Case No. 1:12-cv-128

RAY MABUS, *Secretary of the Navy*,

    Defendant.

## MEMORANDUM OPINION

This employment discrimination dispute arises from the Plaintiff's former role as a Navy Supervisory Logistics Management specialist at Quantico, Virginia. Before the Court is the Defendant's motion for summary judgment. For the reasons set forth below, the Defendant's motion is GRANTED.

## BACKGROUND

The Plaintiff, Michael A. Watt, is a former Supervisory Logistics Management specialist in the Motor Transport Branch at the Marine Corps in Quantico, Virginia ("the Navy"). Watt, who is an African-American Army veteran, served in this capacity from approximately mid-2005 until January, 2008. The complex background to this case can be broken into four parts. The first regards Watt's allegations of disturbing racially-motivated animus. The second concerns the Navy's claims of Watt's improper professional conduct. The third involves the administrative proceedings arising from both parties' allegations. Finally, the fourth deals with the procedural history of the matter before this Court. Each part of the relevant background is discussed in turn.

Watt makes disturbing allegations concerning the conditions of his working environment at Quantico. According to Watt, within months of starting work he began to have issues with a

few of his subordinates. The record reflects a particularly frigid relationship between Watt and three employees: Lloyd Aucoin, Connie Dorsey, and Art Foss. Watt claims that early during his tenure, Dorsey filed a false and racially-motivated sexual harassment claim which she later admitted was "a joke." Later, the word "Nigger" was written on Watt's personal vehicle. Watt asserts that shortly after this incident, Aucoin admitted to hanging a poster in the department's common space which depicted a picture of a caveman and stated "So easy a caveman can do it – U.S. Army Mr. Watt." Watt was also informed that a picture of his face was used as a dartboard in a similar area and that racially-charged graffiti using the n-word had been found in a bathroom which he used. In addition, Watt states that he received messages from a website entitled "willselfdestruct.com" stating that he would "come to the end of his time like Hitler and Napoleon." Capping off these troubling claims is Watt's assertion that when he attempted to bring these incidents to the attention of his supervisor, Captain Amy Cahoon (now Amy LaRose), she scolded *him* for using the n-word and did nothing to investigate the allegations.

Towards the end of 2007, Dorsey and Foss circulated a petition alleging that it was Watt who was creating a hostile work environment. Watt brought this petition to the attention of his supervisors, and was led to believe that Colonel Kathy Velez had initiated an internal investigation to determine whether Dorsey and Foss's petition represented a misuse of time. The record demonstrates that on January 15, 2008, Velez appointed Montel Selbe to "inquire into allegations that Ms. Connie Dorsey, and possibly others within [the Department] are circulating a petition on duty time to have Mr. Watt removed from his position." *See* Dkt. No. 79, Exh. E. Selbe was also directed to "look into an allegation that Ms. Dorsey, and possibly others within [the Department] are making derogatory remarks about Mr. Watt." *Id.*

From the Navy's perspective, the dispositive events relevant to this controversy began in 2008 and share a common theme: Watt's failure to adequately and professionally carry out his responsibilities. On January 11, 2008, the American Federation of Government Employees Local 1786 ("the Union") filed a charge with the Federal Labor Relations Authority claiming that Watt had violated the collective bargaining agreement. Under the Navy's view, this charge preceded the petition against Watt. In any event, the parties agree that on January 25, 2008—shortly after Watt raised his concerns to LaRose regarding the hostile environment—the Union submitted a second collective bargaining agreement violation charge against Watt. The Union further alleged Watt had "displayed inappropriate and unacceptable behavior" in the department. That same day LaRose placed Watt on paid administrative leave pending an investigation into allegations of "serious misconduct." LaRose then appointed Captain Susan Craig to conduct an official administrative inquiry regarding those accusations. *See* Dkt. No. 79, Exh. I.

It is worth pausing at this point to highlight what is perhaps the most significant factual disagreement between the parties. Watt asserts that LaRose hijacked the Velez and Selbe investigations into other employees' misuse of time and transformed them into a racially-motivated review of Watt's activity. The Navy maintains that LaRose's management of Cahoon's administrative inquiry was nothing more than a well-executed internal investigation into serious allegations of Watt's workplace misconduct. As will become clear in the discussion below, this factual disagreement is not material in light of Watt's legal claims and the record as a whole.

After conducting the Velez-directed investigation, Selbe ultimately concluded that "All allegations listed in [the Union's] report of hostile work conditions [are] confirmed and verified accurate." *See* Dkt. No. 78, Exh. E. The LaRose-directed investigation by Craig reached a similar

conclusion, substantiating the allegations of serious misconduct by Watt. *See id.*, Exh. J. Captain Craig found that Watt should not hold a supervisory position because (1) he failed to keep personnel records on individuals he supervised, (2) he did not complete Marine Fitness reports properly or on time, (3) he lacked "correspondence proficiency," (4) he "displayed unprofessional and childish behavior," (5) neglected his supervisory responsibilities, and (6) was unable to handle the stress of his role. *See id.* Watt has never questioned the factual basis of these conclusions.

Following these investigations LaRose expressed her intent to terminate Watt's employment. Watt resigned in response. *See* Dkt. No. 79, Exh. K. In his official resignation submission, Watt noted that "I am resigning because I have been subjected to severe and pervasive harassment, retaliation, [and] discrimination because of my race (black)." *Id.*

Shortly after submitting his resignation Watt filed an informal complaint with the Marine Corps Office of Equal Employment Opportunity ("EEO"). *See* Dkt. No. 79, Exh. L. In this informal complaint Watt alleged that he had been discriminated against because of his race and subjected to reprisal. Watt cited his placement on administrative leave, Dorsey's false allegation of sexual harassment, and "a vast amount of other ongoing issues" involving Dorsey and Foss's attempts to have him removed from his "supervisor position" as the factual bases of this charge. *Id.* On March 4, 2008, Watt formalized his EEO complaint. In this formal complaint Watt repeated the allegations from the informal complaint, and added the claims regarding the caveman poster, the hate mail, and additional incidents of Foss and Dorsey making false allegations against him. *See* Dkt. No. 79, Exh. M.

On April 16, 2008, following yet another internal investigation, the Navy issued Watt a Notice of Proposed Removal for Conduct Unbecoming, Careless or Negligent Performance of Duties, and Lack of Candor.

Watt's EEO complaint was adjudicated between 2008 and 2011. After filing an amended complaint with the assistance of counsel, Watt's claim was eventually dismissed without a hearing.

Although not as tortuous as the history of his employment at Quantico, the procedural history of Watt's case before this Court is also intricate. Watt filed his initial complaint *pro se* on February 8, 2012. *See* Dkt. No. 1. Four months later the Navy filed its first motion for summary judgment. *See* Dkt. No. 5. After a hearing was held on the motion, the Court treated the Navy's motion as a motion to dismiss, dismissed Watt's complaint without prejudice, and granted him ninety days to amend his complaint. *See* Dkt. No. 14. The Court then granted Watt an extension to draft his amended complaint, which he finally did file on January 4, 2013. *See* Dkt. Nos. 21 and 22. Watt's Amended Complaint contained five counts: hostile work environment (Count I), constructive discharge (Count II), disparate treatment (Count III), retaliation (Count IV), and denial of right to counsel (Count V).

The Navy again moved for summary judgment on February 25, 2013. *See* Dkt. No. 23. A week later, Stephen Barkai Pershing entered his notice of appearance on behalf of Watt. *See* Dkt. No. 27. Upon entering the case Pershing filed numerous motions to continue and for extensions of time, and eventually the Court granted Watt an extension to respond to the Navy's motion. *See* Dkt. No. 36. After additional delays, and with the Navy's motion still pending, Pershing moved to withdraw as Watt's attorney. *See* Dkt. No. 64. On March 14, 2014, Thomas Hennessy—the lawyer who had assisted Watt during his EEO proceeding—entered an appearance on Watt's

behalf. *See* Dkt. No. 68. The Navy then renewed its motion for summary judgment for the third time. *See* Dkt. No. 78. Considering Hennessy's late arrival, the Court again granted Watt an extension.

Ultimately, Hennessy entered a very brief opposition to the Navy's summary judgment motion, making arguments only in defense of Watt's retaliation claim (Count IV). On May 23, 2014, the Court held a hearing on the Navy's motion for summary judgment. At the hearing Hennessy affirmed his desire to focus the case on Watt's retaliation claims. After hearing argument from the parties on all of Watt's claims, the Court took the matter under advisement.

## DISCUSSION

### I. Standard of Review

Summary judgment should be granted where the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court explained, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Finally, in making a summary judgment determination, the Court must view the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## II. Retaliation (Count IV)

The Court begins with the admitted focus of Watt's complaint: his retaliation claim. Title VII makes it illegal for an employer to retaliate against an employee "on account of an employee having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2523 (2013). Watt claims the Navy violated this ban by initiating adversarial procedures against him after he told LaRose that he was being subjected to a hostile work environment. During oral argument on the Navy's motion for summary judgment, Watt's attorney explicitly stated his belief that retaliation represented his client's strongest claim.

As the Supreme Court has recently clarified, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 133 S.Ct. at 2528. This standard forces Watt to show "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533. Watt cannot meet this high burden. At no point in this case's long history has Watt been able to produce any sort of reliable evidence indicating that his complaint of racial discrimination to LaRose was the but-for cause of his being placed on administrative leave. Or, put another way, Watt cannot show that his employment would have continued even if he had not aired his grievance.

This conclusion, which is mandated by the but-for standard from *Nassar*, is also reinforced by the general burden-shifting framework for Title VII claims under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Watt has made out a *prima facie* case of race-based retaliation. The Navy has produced legitimate nondiscriminatory reasons for the investigations into Watt's professional conduct—and those investigations produced reliable and

lawful bases for Watt's eventual termination. The burden thus shifts to Watt to show that these legitimate reasons were mere pretext. *Id.* at 804. Watt has never asserted that the factual findings of either the Selbe or Craig investigations were inaccurate, thus conceding his employment was terminated for lawful, non-racial reasons. This alone forces the Court to conclude the Navy is entitled to summary judgment on Watt's retaliation claim. *See Gillins v. Berkeley Elec. Co-op., Inc.*, 148 F.3d 413, 416 (4th Cir. 1998) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown that the reason was false, and that discrimination was the real reason." (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

### III. Hostile Work Environment and Constructive Discharge (Counts I and II)

Although Watt's lawyer expressed a desire to abandon his client's hostile work environment and constructive discharge claims, the extreme nature of the factual allegations made by Watt motivate the Court to comment fully on these two counts.

To maintain a hostile work environment claim Watt must show that he was subject to racially-motivated harassment that was "(1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998)). To establish his constructive discharge claim, Watt must show that the Navy deliberately made his working conditions objectively intolerable. *See Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 272 (4th Cir. 2001) (citations omitted).

The Navy contends that Watt's allegations, even if taken as true, still do not show "severe or pervasive conditions" that were "objectively intolerable." The Court finds this argument unavailing, particularly at the summary judgment phase. Watt's allegations are alarming. The Navy is wrong to assert those accusations do not present a genuine issue of material fact of

whether Watt was subjected to a hostile and intolerable working environment under any standard. Instead, the legal shortcoming of these claims is found in Watt's failure to exhaust administrative remedies.

The EEOC is initially responsible for enforcing the terms of Title VII. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005); 42 U.S.C. § 2000e-5(e)(1). The statute's exhaustion requirement mandates that "[o]nly those discrimination claims stated in the initial [EEOC] charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *See Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (internal citations omitted). Under this requirement, any claims that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof" cannot be raised in subsequent lawsuits. *Chacko*, 429 F.3d at 509. On the other hand, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Id.*

In his initial informal complaint, Watt focused on his retaliation claim. In particular, Watt alleged that LaRose had placed him on administrative leave, and Foss and Dorsey had attempted to have him removed from his "supervisor position." See Dkt. No. 79, Exh. L. Some confusion was created when, in his subsequent formal complaint, Watt referenced specific factual allegations seemingly unrelated to his retaliation claim. *See id.*, Exh. M. After further administrative proceedings, the EEO office contacted Watt's lawyers in order to eliminate the confusion. *See id.*, Exh. P. Watt responded, through his attorney, that he was "alleging that he was discriminated against, based on his race (Black) and reprisal (prior EEO activity) *when on April 16 2008, he received a letter of proposed dismissal from his position of Logistics*

*Management Specialist.*" *Id.* (emphasis added). This response clarified that the factual allegations in Watt's EEO charge covered only his retaliation claim. Furthermore, the response did not mention the facts Watt now turns to in support of his hostile work environment and constructive discharge claims. Because the factual allegations in his administrative charge are not "reasonably related to the factual allegations" supporting Counts I and II of his complaint, those claims are procedurally barred and must be dismissed.

### IV. Disparate Treatment (Counts III)

Watt's final Title VII claim requests relief for alleged disparate treatment based on race. To maintain this disparate treatment claim Watt must show: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subjected to adverse employment action; and (4) similarly situated employees outside his class received more favorable treatment. *See Cottman v. Rubin*, 35 Fed. Appx. 53, 55 (4th Cir. 2002) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

As noted above, Watt cannot show his job performance was satisfactory. Neither has Watt pointed to a similarly situated employee who received more favorable treatment. Watt relies on alleged favorable treatment of Aucoin to meet the *prima facie* requirements for a disparate impact claim. For Aucoin to be similarly situated, there must be "enough common features between [him and Watt] to allow for meaningful comparison." *See Haywood v. Locke*, 387 Fed. Appx. 355, 360 (4th Cir. 2010) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). The record demonstrates that Aucoin was Watt's subordinate, and thus was not similarly situated to Watt in any material respect. *See Austen v. HCA Health Serv. of Virginia, Inc.*, 5 Fed. Appx. 253 (4th Cir. 2001) (supervisor not similarly situated to subordinates). Consequently, Watt's disparate treatment claim fails as a matter of law.

V.  **Denial of Right to Counsel (Count V)**

In addition to his Title VII claims, Watt argues he was denied a right to counsel in violation of 5 U.S.C. § 555(b) when his attorney, Thomas Hennessy, was not allowed to be present when Watt met with Craig as part of her investigation. Throughout this litigation Hennessy has all but abandoned this claim, and for good reason.

Section 555(b) of the Administrative Procedures Act ("APA") provides that "A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative." 5 U.S.C. § 555(b). This section does not provide an individual cause of action. Judicial review under the APA is limited to the circumstances outlined in 5 U.S.C. § 706, under which, among other things, a court is to "review the whole record" and give "due account" to "prejudicial error." Tellingly, very few courts have reviewed the novel claim presented in Count V of Watt's Complaint. Those that have likewise find that a plaintiff must demonstrate prejudice. *See, e.g., Mississippi River Corp. v. F.T.C.*, 454 F.3d 1083, 1093 (8th Cir. 1972).

To the extent Watt had a right to have Hennessy present at his meeting with Craig, he suffered no prejudice when this proposed right was violated. Multiple investigations reached the same conclusions regarding the reasons for Watt's proposed termination. Hennessy, on behalf of Watt, has had multiple opportunities to rebut those conclusions in the administrative proceedings below and before this Court. At no point has Watt launched such an argument, nor does it appear that he could. Accordingly, judgment on Count V should enter in favor of the Navy as a matter of law.

## CONCLUSION

The Court has afforded Watt and his attorneys every opportunity to present his claims. Because there are no genuine issues of material fact and the Navy is entitled to summary judgment as a matter of law, however, Watt's complaint is DISMISSED with prejudice. A corresponding order shall issue.

June 4, 2014
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge